UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAL-PAC RANCHO CORDOVA, LLC dba PARKWEST CORDOVA CASINO, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF THE INTERIOR, et al., <br><br> Defendants. | No. 2:16-cv-02982-TLN-AC <br><br> **ORDER** |

This matter is before the Court on Plaintiffs Cal-Pac Rancho Cordova LLC, Capitol Casino, Inc., Lodi Cardroom, Inc., and Rogelio's Inc.'s (collectively, "Plaintiffs") Motion for Summary Judgment. (ECF No. 31.) Also before the Court is Defendants United States Department of the Interior, Secretary of the Interior Deb Haaland, and Assistant Secretary — Indian Affairs Bryan Newland's[1] (collectively, "Defendants") Cross-Motion for Summary Judgment. (ECF No. 35.) Both motions have been fully briefed. For the reasons set forth below, the Court DENIES Plaintiffs' motion and GRANTS Defendants' motion.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Deb Haaland is automatically substituted for David Bernhardt as Secretary of the Interior and Bryan Newland for former Assistant Secretary — Indian Affairs Tara Sweeney.

1

## I.     Factual and Procedural Background

This case involves a challenge under the Administrative Procedure Act ("APA") to Defendants' issuance of Secretarial Procedures, which allow the Estom Yumeka Maidu Tribe of the Enterprise Rancheria (the "Tribe") — a federally recognized Indian tribe — to conduct casino gambling on a parcel of newly acquired off-reservation land in Yuba County, California (the "Yuba Parcel"). (ECF No. 1 at 2.)

The facts of this case are undisputed. (*See* ECF No. 31-1 at 11; *see also* ECF No. 35 at 19–20.) In August 2002, the Tribe applied to the Department of the Interior (the "Department") to have the Yuba Parcel taken into trust for the purpose of constructing a casino, hotel, and related infrastructure pursuant to the Indian Reorganization Act ("IRA").[2] (ECF No. 35 at 16.) In 2006, the Tribe supplemented its application with a request that the Secretary also determine the Yuba Parcel's eligibility for gaming under the Indian Gaming Regulatory Act ("IGRA").[3] (*Id.*)

In September 2011, the Assistant Secretary issued a Record of Decision ("ROD") concluding that once in trust, the Yuba Parcel would be eligible for gaming pursuant to 25 U.S.C. § 2719(b)(1)(A).[4] (*Id.* at 17.) The Governor concurred by letter in August 2012. (*Id.*) That same day, the Governor also signed a Class III gaming compact with the Tribe.[5] (*Id.* at 18.) The

---

[2]     IRA authorizes the federal government to acquire "any interest in lands," whether "within or without existing reservations," for the "purpose of providing land for Indians." 25 U.S.C. § 5108.

[3]     IGRA was enacted in 1988 to "provide a statutory basis for the operation of gaming by Indian tribes as a means of promoting tribal economic development, self-sufficiency, and strong tribal governments." 25 U.S.C. § 2702(1). IGRA generally prohibits gaming on land taken into trust for tribes after October 17, 1988. *Id.* § 2719(a).

[4]     25 U.S.C. § 2719(b)(1)(A) permits gaming if: (1) the Secretary determines that a gaming establishment on newly acquired trust lands would be in the tribe's best interest and not detrimental to the surrounding community; and (2) the governor of the affected state concurs in the Secretary's determination.

[5]     IGRA divides gaming into three classes of activities. *See* 25 U.S.C. § 2710. Class III gaming includes slot machines and house banking games, including card games and casino games. *Id.* § 2703(8). Class III gaming must be conducted in conformance with a "Tribal-State compact entered into by the Indian tribe and the State" or, if attempts to reach such a compact are unsuccessful, Class III gaming can be conducted pursuant to Secretarial Procedures prescribed by the Secretary under IGRA's mediation process. *Id.* §§ 2710(d)(1)(C), (d)(7)(B)(vii)(II).

1   Governor's office forwarded the compact to the California legislature for ratification. (*Id.*)

2   The Yuba Parcel was taken into federal trust for the Tribe on May 15, 2013. (*Id.*) The California legislature took no action toward ratifying the gaming compact during 2013 or early 2014, and the compact became ineligible for legislative ratification by its own terms on July 1, 2014. (*Id.*) The Tribe then filed suit under 25 U.S.C. § 2710(d)(7)(A)(i) of IGRA's remedial scheme. (*Id.* at 19.) In that action, this Court ordered the State and the Tribe to proceed under 25 U.S.C. § 2710(d)(7)(B)(iii) to conclude a gaming compact within 60 days. (*Id.*) The parties failed to do so, which triggered IGRA's requirement that the parties submit to a court-appointed mediator. (*Id.*) The mediator found the Tribe's proposed compact best comported with IGRA and forwarded it to the State for its consent. (*Id.*) The State failed to consent within the IGRA-mandated 60 days, and the Tribe's compact was then submitted to the Secretary. (*Id.*) On August 12, 2016, the Secretary issued Secretarial Procedures prescribing the parameters under which the Tribe may conduct Class III gaming activities on the Yuba Parcel.[6] (*Id.*)

Plaintiffs are four state-licensed card clubs located within the same area as the proposed casino site. (ECF No. 1 at 5.) Plaintiffs contend they would be at a competitive disadvantage if the Tribe opens a Nevada-style casino and operates casino-style games in the area because Plaintiffs are more limited in the gaming they can offer. (*Id.* at 5–6.) Plaintiffs filed this action on December 21, 2016, seeking injunctive relief and declaratory relief based on: (1) violation of IGRA's jurisdiction requirement; (2) the unconstitutionality of IRA; (3) violation of IGRA due to inconsistency of Secretarial Procedures with state law; (4) and erroneous interpretation of IGRA. (*Id.* at 12–19.) Plaintiffs filed a motion for summary judgment on May 13, 2019, and Defendants filed a cross-motion for summary judgment on July 12, 2019. (ECF Nos. 31, 35.)

---

[6]   In the final stage of the IGRA remedial process, the Secretary must prescribe gaming procedures under which Class III gaming may be conducted "on the Indian lands over which the Indian tribe has jurisdiction." 25 U.S.C. § 2710(d)(7)(B)(vii)(II); *see also* 25 U.S.C. 2710(d)(3)(A). Courts have read this section as imposing two requirements: (1) that an Indian tribe "have jurisdiction" over the gaming site; and (2) that the tribe "exercise governmental power" over the land. *See Club One Casino, Inc. v. United States Dep't of the Interior* ("*Club One I*"), 328 F. Supp. 3d 1033, 1043 (E.D. Cal. 2018).

## II. STANDARD OF LAW

Summary judgment is an appropriate mechanism for reviewing agency decisions under the APA. *Turtle Island Restoration Network v. U.S. Dep't of Commerce*, 878 F.3d 725, 732 (9th Cir. 2017); *City & Cnty. of S.F. v. United States* (*S.F.*), 130 F.3d 873, 877 (9th Cir. 1997); *Occidental Eng'g Co. v. Immigr. & Naturalization Service*, 753 F.2d 766, 769–70 (9th Cir. 1985). However, courts do not utilize the standard analysis for determining whether a genuine issue of material fact exists. *See Occidental*, 753 F.2d at 769–70; *Acad. of Our Lady of Peace v. City of San Diego*, 835 F. Supp. 2d 895, 902 (S.D. Cal. 2011); *Cal. RSA No. 4 v. Madera Cnty.*, 332 F. Supp. 2d 1291, 1301 (E.D. Cal. 2003). A court "is not required to resolve any facts in a review of an administrative proceeding." *Occidental*, 753 F.2d at 769; *Cal. RSA*, 332 F. Supp. 2d at 1301. Instead, in reviewing an agency action, the relevant legal question for a court reviewing a factual determination is "whether the agency could reasonably have found the facts as it did." *S.F.*, 130 F.3d at 877; *Occidental*, 753 F.2d at 769.

The Court's review in resolving an APA challenge to an agency action is circumscribed: the Court will only set aside agency action if its "'findings[ ] and conclusions [are] found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,' 'in excess of statutory jurisdiction,' or 'without observance of procedure required by law.'" *Turtle Island*, 878 F.3d at 732 (quoting 5 U.S.C. §§ 706(2)(A), (C)–(D)). Agency action is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law "only if the agency relied on factors Congress did not intend it to consider, entirely failed to consider an important aspect of the problem, or offered an explanation that runs counter to the evidence before the agency or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Defs. of Wildlife v. Zinke*, 856 F.3d 1248, 1256–1257 (9th Cir. 2017) (citation omitted); *see Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983) (stating an "agency must examine the relevant data and articulate a satisfactory explanation for its action"). This standard is "highly deferential, presuming the agency action to be valid and affirming the agency action if a reasonable basis exists for its decision." *Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S. Dep't of Agric.*, 499 F.3d 1108,

4

1115 (9th Cir. 2007) (quoting *Indep. Acceptance Co. v. California*, 204 F.3d 1247, 1251 (9th Cir. 2000)). Review under this standard is narrow, and the court may not substitute its judgment for that of the agency. *Morongo Band of Mission Indians v. Fed. Aviation Admin.*, 161 F.3d 569, 573 (9th Cir. 1988). Nevertheless, the Court must "engage in a substantial inquiry. . . a thorough, probing, in-depth review." *Native Ecosys. Council v. U.S. Forest Serv.*, 418 F.3d 953, 960 (9th Cir. 2005) (citation and internal quotations omitted).

### III. ANALYSIS

In moving for summary judgment, Plaintiffs make two main arguments: (1) the Secretarial Procedures were issued in violation of IGRA, as the Tribe purportedly never acquired jurisdiction or exercised governmental power over the Yuba Parcel (ECF No. 31-1 at 21); and (2) assuming the Tribe acquired jurisdiction and exercised governmental power, IRA violates the Tenth Amendment by reducing the State's jurisdiction over land within its territory without its agreement (*id.* at 39).

Following the parties' full briefing on these issues, Defendants notified the Court of intervening authority that entirely disposes of Plaintiffs' main arguments. (ECF Nos. 41, 42.) More specifically, Defendant notified the Court of the Ninth Circuit's May 27, 2020 decision in *Club One Casino, Inc. v. Bernhardt* ("*Club One II*"), 959 F.3d 1142, 1145 (9th Cir. 2020), *cert. denied sub nom. Club One Casino, Inc. v. Haaland*, 141 S. Ct. 2792 (2021). As in the instant case, the plaintiffs in *Club One II* were cardrooms challenging a casino project on a parcel of off-reservation land taken into trust for a federally recognized Indian tribe. *Id.* at 1145. The plaintiffs in *Club One II* raised the same arguments Plaintiffs raise here, and the Ninth Circuit addressed those arguments in depth.[7] *Id.* at 1148. As to the jurisdiction issue, the Ninth Circuit held: (1) "the federal government confers tribal jurisdiction over lands it acquires in trust for the benefit of tribes as a matter of law"; (2) the Secretary was not legally required to consider whether the tribe possessed jurisdiction and exercised governmental power over the parcel (and

---

[7] Plaintiffs admit *Club One II* involves "identical issues to this case" and the only significant factual difference between *Club One II* and the instant case is that in *Club One II*, the People of California rejected a compact via statewide referendum vote, while the legislature refused to approve a compact for the casino in the instant case. (ECF No. 36 at 11.)

1   both conditions were met in any event); and (3) the tribe's acquisition of any jurisdiction over the
2   parcel did not require the State's consent or cession. *Id.* at 1150–52. As to the Tenth Amendment
3   issue, the Ninth Circuit succinctly held "[b]ecause Congress has plenary authority to regulate
4   Indian affairs, . . . IRA does not offend the Tenth Amendment." *Id.* at 1152–53. Because *Club*
5   *One II* is binding on this Court and squarely resolves the legal issues at hand, the Court need not
6   and does not address those issues further.[8] As such, Defendants are entitled to summary
7   judgment as to Plaintiffs' first two arguments.

8         Plaintiffs raise two alternative arguments. First, Plaintiffs argue the Governor's
9   concurrence in the Secretary's two-part determination as to gaming eligibility on the Yuba Parcel
10   was negated by the California legislature's refusal to ratify the Class III gaming compact. (ECF
11   No. 31-1 at 20.) In response, Defendants essentially argue the Governor's concurrence as to the
12   Secretary's two-part determination is irrelevant to the Secretarial Procedures. (ECF No. 35 at
13   1040–41.) Defendants emphasize IGRA does not require the Governor's concurrence in
14   Secretarial Procedures, nor does it require the Secretary to determine the validity of the
15   Governor's concurrence in the Secretary's two-part determination. (*Id.* at 41.)

16         The Court agrees with Defendants. Plaintiffs conflate two distinct agency actions. The
17   first agency action is the two-part determination as to gaming eligibility. "In order for a tribe to

---

[8] The Court will, however, address Plaintiffs' argument that the Tribe does not exercise governmental power over the Yuba Parcel, which is a prerequisite to prescribing Secretarial Procedures. (ECF No. 31-1 at 35.) IGRA does not define "exercising governmental power," and "the case law considering the phrase is sparse." *Club One I*, 328 F. Supp. 3d at 1047. The Ninth Circuit did not define the phrase in *Club One II* but found that the record clearly indicated the tribe exercised governmental power by entering into various agreements with local government for the provision of law enforcement and fire protection services, enacting a gaming ordinance for the parcel, and enacting an ordinance approving a conservation plan for the parcel. *Club One II*, 959 F.3d at 1151. Here, the evidence available to the Secretary in the time before the Secretarial Procedures were issued indicate that the Tribe had enacted a gaming ordinance with respect to the Yuba Parcel, which this Court finds is sufficient to show the Tribe exercised governmental power over the site by legislating with respect to it. Although Plaintiffs argue the single gaming ordinance is insufficient, Plaintiffs do not cite any binding authority precluding such a finding. (ECF No. 36 at 22); *see Massachusetts v. Wampanoag Tribe of Gay Head*, 853 F.3d 618, 625–26 (1st Cir. 2017) (stating that "the achievement of full-fledged self-governance" was not necessary — only "merely movement in that direction" and noting that any doubt in resolving whether a tribe exercises sufficient governmental power is "to be resolved in favor of Indians").

engage in *any* gaming on off-reservation land acquired after October 17, 1988, . . . the Secretary must make a determination finding that gaming would be in the best interest of the Indian tribe and its members, and would not be detrimental to the surrounding community, [25 U.S.C.] § 2719(b)(1)(A) . . . [and] the governor of the state must concur in the determination, *id.*" *Club One II*, 959 F.3d at 1148 (emphasis in original). The second agency action relates specifically to the additional process to allow Class III gaming on the land. "In order for a tribe to engage in *Class III* gaming, . . . the Secretary must also either approve a tribal-state compact, *id.* § 2710(d)(1)(C), or prescribe secretarial procedures, if the state failed to negotiate in good faith, *id.* § 2710(d)(7)(B)(vii)." *Id.* (emphasis in original). Nothing in either section suggests the legislature's failure to ratify a Class III gaming compact negates a Governor's concurrence in the Secretary's two-part determination as to gaming eligibility. To the extent Plaintiffs argue the Governor was required to concur to the Secretarial Procedures, Defendants correctly point out that nothing in 25 § U.S.C. § 2710(d)(7)(B), which sets forth the process for prescribing Secretarial Procedures when Class III gaming compact negotiations fail, requires the Governor's concurrence. To the contrary, Secretarial Procedures for Class III gaming only become necessary when the State has refused to enter into a compact, so it seems illogical to suggest the Governor would be required to concur at that stage. *See* 25 § U.S.C. § 2710(d)(7)(B)(vii).

Lastly, Plaintiffs argue the Secretarial Procedures are inconsistent with California law requiring a compact for Class III gaming. (ECF No. 31-1 at 37–38.) The *Club One I* court rejected this exact argument, stating "[p]laintiffs cite no case authority for this proposition and it is undercut by . . . *Hotel Employees and Restaurant Employees Intern. Union v. Davis*, 21 Cal. 4th 585 (1999)," wherein the California Supreme Court explained that the State had waived immunity to give effect to IGRA's remedial framework. *Club One I*, 328 F. Supp. 3d at 1049–50. The court further explained, "The issuance of Secretarial Procedures is the part of the remedial process that gives it teeth. If gaming pursuant to Secretarial Procedures was not contemplated, the purpose of the remedial process — restoring leverage to tribes to sue recalcitrant states and thereby force them into a compact — would be wholly eroded." *Id.* at 1050. The court declined to "read IGRA to have created (or the State of California to have waived immunity as to) an

empty remedial process." *Id.*  This Court agrees that "[s]uch an outcome must be rejected." *Id.*

## IV. CONCLUSION

In sum, the Secretary's issuance of Secretarial Procedures was not arbitrary, capricious, or otherwise not in accordance with law for any of the reasons identified by Plaintiffs.  Based on the foregoing, the Court hereby DENIES Plaintiffs' motion for summary judgment (ECF No. 31) and GRANTS Defendants' motion for summary judgment (ECF No. 35).  The Clerk of Court is directed to enter judgment in Defendants' favor and close the case.

IT IS SO ORDERED.

**DATED: DECEMBER 6, 2021**

Troy L. Nunley
United States District Judge